WALLEY *vs.* SCHOONER LIBERTY.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF
NEW-ORLEANS.

A public armed vessel of a foreign state at peace with the United States,
   while enjoying in a friendly manner the hospitality of our waters, is
   exempt from the jurisdiction of the local tribunals.

Where the United States has admitted the existence of a civil war between
   any two foreign powers, whether it has already entered into any diplo-
   matic relations with either, or not, must regard both as belligerents and
   sovereign powers.

So, while Texas and Mexico were engaged in a civil war, and before the independence of the former was recognized by the United States: *Held,* that she was to be regarded as a belligerent and sovereign power, and her armed vessels entitled to the hospitality of our waters, without being liable to seizure on the part of creditors, in our local tribunals.

The plaintiff alleges that he furnished supplies, consisting of various articles of iron-ware, cordage and ship chandlery, for the use of the schooner Liberty, in the months of May and June, 1836, then lying in the port of New-Orleans, at the special instance and request of her officers. He alleges she is indebted to him for these supplies in the sum of seven hundred and seventy-five dollars and eighty cents, according to an account annexed, for which he has a privileged claim on said vessel, tackle, &c., she not having made a voyage since, and that her owners are absent from the state. He prays that she be seized, together with the tackle, and sold, to satisfy his demand.

Bass intervened, and put in a claim also for a privileged debt on the schooner.

The Republic of Texas appeared by counsel, and averred, that said schooner Liberty is its property, and is an armed national vessel of the Republic in its service, and is not liable to be seized and proceeded against in this way. The counsel prayed for the dismissal of the proceedings and suit.

Upon these pleadings and issues, the case was tried before the court.

The evidence fully established the fact, that the vessel under seizure was an armed schooner, in the service of the Republic of Texas, then lying in the port of New-Orleans.

The parish judge considered the whole case as involved in the question, "can an armed vessel belonging to a foreign nation or government be subject to the jurisdiction of the courts of this state?"

In an elaborate opinion on the subject, the judge came to the conclusion, that according to the principles of international law, as recognized by the Supreme Court of the United States, public armed vessels were not liable to seizure in neutral waters by the local authorities.

Judgment of dismissal was rendered, from which the plaintiff appealed.

WALLEY
*vs.*
SCHR. LIBERTY.
*Buchanan*, of counsel for the plaintiff, made the following points:

1. The plaintiff's claim as furnisher of supplies is privileged upon the schooner Liberty, and a privilege of this nature attaches to every vessel, without regard to her character.

2. This privilege is of the nature of the contract, and the decision of the court below is unconstitutional, in impairing the obligation of a contract.

3. The authority of H. Lockett, Esq. to represent the Republic of Texas, is not shown. A government can only be represented in or out of court by a duly accredited agent.

4. The Republic of Texas has never been recognized by the United States. The judiciary has no authority to recognize the independent or sovereign existence of a foreign state.

*Lockett*, of counsel for the Texian Republic, claiming the exemption of the schooner from seizure, as a national armed vessel in a neutral port, submitted the case on the decision and reasons contained in the opinion of the parish judge.

*Bullard, J.*, delivered the opinion of the court.

In this case the new Republic of Texas, before its independence was recognized by the government of the United States, but while engaged in hostilities with Mexico, and treated by our government as a belligerent, interposed a claim for the restoration of the schooner Liberty as a public armed vessel of that power, which had been seized under process issued from the Parish Court. Its release and restoration were decreed, and the seizing creditors appealed.

A public armed vessel of a foreign state, at peace with the United States, while enjoying in a friendly manner the hospitality of our waters, is exempt from the jurisdiction of the local tribunals.

It appears to be a settled principle of international law, as taught by elementary writers, and recognized by the highest judicial authority of the Union, that a public armed vessel of a foreign state at peace with the United States, while enjoying in a friendly manner the hospitality of our waters,

is exempt from the jurisdiction of the local tribunals.
7 *Cranch,* 116.

Whether the new state of Texas at the time this claim was set up, and before its independence was acknowledged by the United States, could be regarded as a sovereign power, and entitled to assert such an exemption as is claimed in this case, appeared to us at first a question of more difficulty. On the one hand, it certainly is not a judicial question, whether Texas be or be not a sovereign power; nor is it strictly a political question to be settled by a different department of the government. On the other hand, it appears equally clear, that when the government of the United States has admitted the existence of a civil war between any two foreign powers, whether it has entered already into any diplomatic relations with either, or not, both must be regarded as belligerents and entitled to all the sovereign rights of war, and consequently may claim from us all the obligations of neutrality. During the protracted struggle between Spain and her American colonies, the United States, long before the independence of the latter was acknowledged, recognized the existence of a civil war, and assumed a neutral attitude in relation to the parties as belligerents. In the case of the *Santissima Trinidada,* the Supreme Court of the United States held, that all the immunities which may be claimed by public ships in our ports, under the law of nations, must be considered in such a state of things as equally the right of each party to the war, and as such must be recognized by our courts, until congress shall pursue a different rule. 7 *Wheaton's Reports,* 283, *et seq.*

But it is contended, that the authority of the attorney, as agent to represent the new republic is not shown, and that a government can only be represented by a duly accredited agent. This argument assumes as a principle, that in a case of this kind, the sovereign must make himself a party in the court of the neutral, and consequently, submit himself to its jurisdiction. But in the case of the Exchange first alluded to, which was that of a French national vessel, the Supreme

*Where the United States has admitted the existence of a civil war between any two foreign powers, whether it has already entered into any diplomatic relations with either, or not, must regard both as belligerents and sovereign powers.*

*So, while Texas and Mexico were engaged in a civil war, and before the independence of the former was recognized by the United States: Held, that she was to be regarded as a belligerent and sovereign power, and her armed vessels entitled to the hospitality of our waters, without being liable to seizure on the part of creditors, in our local tribunals.*

Court entertained the question without requiring the government of France to intervene, and proceeded to pronounce its judgment on a mere suggestion of the attorney general.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be affirmed, with costs.